Day, J.
The determination of the controversy, in this case, depends chiefly upon the proper construction to be given to the ninth condition of the policy. In the body of the policy, the plaintiff below was insured against loss or damage by fire, on specified articles of property constituting an oil-refinery. An engine, and crude oil in process of refining, were included among the items insured. During the process of refining an explosive gas escapes from the oil.
The object of inserting the ninth condition in the policy, was to exempt the company from liability for certain losses insured against in the body of the policy. The condition is framed upon the evident theory that the company would be liable under the policy, not only for the loss of the insured property by fire, but for any damage it might sustain by reason of certain destructive forces proximately connected with fire, although the property should not be burned. "Whether the theory is well founded or not, it equally aids as in arriving at the intention and meaning of the language employed.
In regard to lightning, the two kinds of damage that may be occasioned thereby are recognized ; and the exemption from liability is confined to that arising only from the destructive force, where no fire ensues. Both kinds of damage that may arise from the explosion of a steam-boiler are recognized; and the exemption is made to apply to both the damages occasioned by the explosive force, and that by fire resulting from the explosion.
But the difficulty arises in determining whether both kinds of damage are embraced in the exemption from liability when caused by the explosion of “gunpowder, gas, *95 or other explosive substance;” or, if not both, which one is included. The clause in question provides that the company will not be liable “ for damage occasioned by the explosion of 'a steam-boiler, nor for damage resulting from such explosion, nor explosions caused by gunpowder, gas, or other explosive substances.” The structure of the clause is unfortunate, if it was intended to include both kinds of damages in the exemption. If that was the purpose, the more natural expression would have been, that the company will not be liable “ for damages occasioned by the explosion of a steam-boiler, or explosions caused by gunpowder, gas,” etc., “ nor for damage by fire resulting from such explosions.” Indeed, the same end would perhaps have been attained, had the exemption in regard to fire resulting from an explosion been omitted. It is contended that the case of the Insurance Co. v. Foote, 22 O. S. 340, decided at the present term, warrants us in holding in this case, that the exemption from damage occasioned by the explosion of gas would have embraced that of fire resulting from the explosion. But the insertion of those words in the clause under consideration distinguishes this case from that; for, in the relation in which they stand in the sentence, they not only evince the idea of liability for two kinds of damage caused by explosions, but are applied to one kind of explosions only, thereby excluding their application to the other explosions mentioned; or that, as to explosions by gunpowder or gas, the exemption applies to but one of the kinds of damage that may result therefrom. It can hardly be supposed that it was the purpose to exempt the company from liability for fire resulting from the explosion of gunpowder or gas, while it remained liable for damage occasioned by an explosion where fire does not ensue. The more reasonable presumption would seem to be, that as gunpowder and gas, when ignited, like lightning or steam, are destructive forces, the purpose was to exempt the company from the kind of damage resulting from the explosive force merely. If this be not the true construction, as to some of the property, the policy was a practical nullity; *96 for it appears that petroleum oil in process of refining could' never be destroyed by fire without being ignited by an explosion of the gas enveloping it while undergoing that process.
In Hare v. Horton, 5 B. & Ad. 715, upon a mortgage of dwelling-houses, foundries, and other premises, together jwith all-fixtures in the dwelling-houses — applying the maxim, expressio unius exelusio alterius — it was held, that, although, without these words, the fixtures in the foundries-would have passed, yet by them, the fixtures intended to pass were confined to those in the dwelling-houses. So, upon the same principle, in this case, although damage by fire might have been included in a general exemption from liability for damage occasioned by the explosion of a steam-boiler, or of gunpowder or gas, yet the exemption for such damage is expressly confined to that resulting from the explosion of a steam-boiler, and therefore excludes the application of the same exemption from loss by fire resulting from explosions caused by gunpowder or gas.
This is a fair and rational construction of the clause in-question, and we have no reason to suppose it does not accord with the understanding of the parties. If, however, the company which framed the policy intended this clause —hid away in one of its numerous conditions — to be interpreted differently, it is but reasonable that they should be held to the employment of language free from obscurity and doubt; and the company has no just reason to complain if a reasonable construction of the language it has used is adopted, though it be not the most favorable to the company. Insurance Co. v. Slaughter, 12 Wal. 404; Aurora Fire Ins. Co. v. Eddy, 49 Ill. 106.
This disposes of the case; for the whole defense was "based on a different construction of the policy, and all the questions made-in the case are resolved by the construction we have given to that instrument. Indeed, the plaintiff' "below was entitled to judgment upon the pleadings; for the loss by fire was admitted by the answer, and the defense interposed thereby was insufficient in law. The judgments of the courts below must therefore be affirmed.